Hand-Delivered

FILED
CHARLOTTE, NC

JUN 17 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA CHARLOTTE
## DIVISION

ELANE MARTIN,

      Plaintiff,

v.

NOVANT HEALTH, INC.,

      Defendant.

Civil Action No.: **3:26-cv-477-SCR**

## COMPLAINT AND JURY DEMAND

### PRELIMINARY STATEMENT

This is an action for disability discrimination, failure to provide reasonable accommodation, interference with rights, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA"). Plaintiff Elane Martin, a Certified Medical Assistant with a documented severe spinal disability, was subjected to a pattern of discriminatory conduct by Defendant Novant Health, Inc., including failure to initiate the ADA interactive process despite documented knowledge of her disability, placement on involuntary leave against her physician's determination one day after her formal accommodation request, termination of her employment while the ADA interactive process was actively ongoing, and termination the day after she submitted a written statement asserting she was able, willing, and available to work at her assigned clinic with reasonable accommodation in place. The stated reason for her termination — that she declined accommodations and disengaged from the interactive process — is directly and completely contradicted by contemporaneous written and audio evidence.

### PARTIES

1. Plaintiff Elane Martin is an individual residing in Charlotte, Mecklenburg County, North Carolina. She may be reached at 8318 Harris Pond Dr. Apt C, Charlotte, NC 28269, telephone 980-219-4506, email aejw7@yahoo.com.

2. Defendant Novant Health, Inc. is a nonprofit corporation organized and existing under the laws of the State of North Carolina, with its principal place of business at 2085 Frontis Plaza Boulevard, Winston-Salem, NC 27103. Novant Health, Inc. is one of the largest healthcare systems in North Carolina, operating more than 850 locations including hospitals, urgent care centers, and physician clinics across North Carolina and neighboring states. At all times relevant to this Complaint, Novant Health employed more than 500 employees and was an employer within the meaning of the ADA, 42 U.S.C. § 12111(5), and the FMLA, 29 U.S.C. § 2611(4).

3. At all times relevant to this Complaint, Defendant acted through its agents, servants, and employees, including but not limited to Catina Vaughan (HR Leave and Accommodation Manager), Kelli Holland (Clinic Supervisor), Marcia Williams (Clinic Lead), and Christine Bolo (Clinic Administrator), all of whom acted within the course and scope of their employment with Defendant.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12117(a).

5. This Court has subject matter jurisdiction over Plaintiff's FMLA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, including Plaintiff's employment, the discriminatory acts, and her termination.

7. Plaintiff has exhausted her administrative remedies. She timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 430-2026-00736. The EEOC issued a Notice of Right to Sue on or about [Date of Right to Sue Letter]. This Complaint is filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

**FACTUAL ALLEGATIONS**

**A. Plaintiff's Employment and Disability**

8. Plaintiff Elane Martin is a Certified Medical Assistant ("CMA") with more than 16 years of clinical experience. She was originally employed by Novant Health from approximately January 2019 through 2021. She was rehired by Novant Health on March 11, 2024 and assigned to the Huntersville Bariatric Solutions clinic as her primary work location.

9. Plaintiff is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102. Specifically, Plaintiff has chronic lumbar stenosis with sciatica, a physical impairment that substantially limits one or more major life activities including walking, standing, and working. Plaintiff's condition also constitutes a record of disability and was regarded as a disability by Defendant.

10. Despite her disability, Plaintiff was a qualified individual within the meaning of the ADA, 42 U.S.C. § 12111(8). She could perform all essential functions of the CMA position with reasonable accommodation. Plaintiff performed all essential CMA functions successfully at her primary Huntersville clinic throughout her employment. Defendant's own representatives acknowledged in a recorded telephone call that Plaintiff had been working successfully at her primary clinic with little to no flare-ups.

11. Defendant's official written CMA job description does not list rotation between clinic locations as an essential function of the CMA position. Location rotation appears only

under the "Work Environment" section of the job description as an operational flexibility note. Furthermore, when asked directly by Plaintiff whether rotating between locations

was classified as an essential function, Defendant's own HR representative responded in writing that "all physical demands and essential functions as listed in your job description are considered the essential functions of your role." Defendant's own job description and its own written response confirm that rotation is not an essential function.

12. During Plaintiff's original employment with Novant Health from 2019 to 2021, Defendant approved Plaintiff's request to be allowance of sit-to-stand workstation as a documented accommodation for her back condition. Upon approval, Plaintiff purchased her own sit-to-stand desk and brought it in. This approved accommodation is documented in Defendant's own HR system. An ADA packet signed by Allison Holden on May 10, 2021 and submitted during the previous period of employment confirms that position changes and a sit-to-stand desk are permanent requirements for Plaintiff. Defendant's failure to provide the approved equipment during Plaintiff's original employment demonstrates a longstanding pattern of approving but failing to implement required accommodations for Plaintiff.

13. Plaintiff was rehired by Defendant on March 11, 2024. In May 2025 — only fourteen months after her rehire — Defendant approved Plaintiff's FMLA leave for her back condition. This approval required Defendant to review and accept medical documentation confirming Plaintiff's serious health condition. Defendant cannot credibly claim ignorance of Plaintiff's disability when it approved FMLA leave for that exact condition in May 2025.

**B. Defendant's Knowledge of Plaintiff's Disability and Failure to Initiate the Interactive Process**

14. Beginning prior to and continuing after her May 2025 FMLA approval, Plaintiff communicated her back condition and physical limitations to her supervisors Marcia Williams and Kelli Holland verbally and through Microsoft Teams messages on multiple occasions. These communications documented that Plaintiff was experiencing pain and physical limitations at work, particularly when assigned to the Charlotte clinic location.

15. On September 2, 2025, Plaintiff messaged supervisors Williams and Holland that she needed to go home early due to back spasms occurring at the Charlotte clinic. Both supervisors acknowledged her condition.

16. On September 22, 2025, Plaintiff messaged Supervisor Holland that she was suffering at the Charlotte location and that the chairs and desks were too low for her back.

17. On October 17, 2025, Plaintiff messaged Supervisor Williams that she was fighting the pain whenever assigned to the Charlotte clinic, even for a half day.

18. Despite this ongoing documented pattern of flare-ups specifically connected to the Charlotte clinic assignment and despite having approved FMLA for Plaintiff's back condition in May 2025, Defendant never initiated the ADA interactive process. Plaintiff was forced to initiate it herself on October 29, 2025 — approximately five months after her FMLA approval.

## C. Plaintiff's Formal Accommodation Request and Defendant's Response

19. On October 29, 2025, Plaintiff formally submitted an ADA accommodation renewal request to Defendant's Leave and Accommodation team. Plaintiff requested: (1) a sit-tostand workstation; (2) an ergonomic chair with lumbar and pelvic support; (3) position changes every 15 minutes; (4) a walking restriction not to exceed 500 feet without a position change or rest break; and (5) assignment to her primary Huntersville clinic due to cumulative physical triggers caused by rotating to alternate clinic locations. Plaintiff specifically distinguished her FMLA leave from her ADA accommodation request in writing.

20. On October 30, 2025 — one day after Plaintiff's formal accommodation request — Defendant placed Plaintiff on involuntary leave against her will and without her consent. Plaintiff's physician had not taken her out of work and had not issued any documentation stating Plaintiff was unable to perform her job duties.

21. On October 31, 2025, Defendant's HR representative asked Plaintiff in writing and in a recorded telephone call to bring her personal back massager and sit-to-stand equipment from the Huntersville location to the Charlotte location. This request proves that the accommodation equipment at Huntersville belonged to Plaintiff personally, not to Defendant. An employer cannot satisfy its ADA accommodation obligation by asking an employee to provide her own personal medical equipment.

22. On October 31, 2025, Defendant's HR representative told Plaintiff that the treating provider would not be at her primary Huntersville clinic the following Monday. Plaintiff reviewed the schedule herself and confirmed that both she and the provider were still assigned to Huntersville. Plaintiff emailed HR about this discrepancy and received no response. On the Monday in question, Plaintiff's supervisor worked Plaintiff's shift at the Huntersville clinic, directly proving that clinic coverage existed and that Defendant's stated reason for the relocation was false.

23. On November 1, 2025, Plaintiff wrote to Defendant's HR: "I want to clarify that I am able and willing to work and I am not requesting leave as an accommodation. Leave is not medically necessary because I am able to perform all essential job duties when working in my regular clinic environment."

24. In early November 2025, Defendant provided Plaintiff with a written statement outlining its accommodation process, which specifically included reassignment to another position at or below current pay as a required step before termination. Defendant later skipped this step entirely in violation of 42 U.S.C. § 12111(9)(B) and its own written process commitment.

25. Defendant's own written position statement acknowledged that if it were unable to identify a reasonable accommodation it could engage in the reassignment process. Defendant never engaged in that process before terminating Plaintiff.

**D. Medical Documentation and the ADA Packet**

26. Plaintiff submitted the ADA Medical Assessment Packet to her Novant Health Spine Specialist. The Novant Spine Specialist declined to complete the packet and referred Plaintiff to a Novant Health Neurosurgeon. The Novant Neurosurgeon refused to complete any documentation until after surgery. The Novant Spine Specialist then declined to complete the packet herself. The failure to complete the ADA Medical Assessment Packet was caused by Defendant's own medical providers.

27. Plaintiff independently sought outside medical care from OrthoCarolina Spine Center at her own initiative and expense. OrthoCarolina issued a return-to-work note on November 12, 2025 documenting that Plaintiff may return to work, should remain at her assigned clinic, should continue using a sit-to-stand adjustable workstation with ergonomic chair for lumbar and pelvic support, and should change position from sitting to standing every 15 minutes.

28. Plaintiff promptly submitted the OrthoCarolina documentation to Defendant. The ADA does not require a specific form to be completed. It requires sufficient medical information to permit good-faith engagement in the interactive process. The documentation Plaintiff submitted was specific, detailed, and more than sufficient.

**E. System Lockouts and Communication Barriers**

29. On November 24, 2025, Plaintiff was locked out of Defendant's email systems. On the same date Defendant sent Plaintiff an email extending her leave through December 5, 2025, demonstrating Defendant had a functioning email channel to communicate with Plaintiff.

30. On November 24, 2025, Plaintiff checked her FMLA leave balance and found 7.99 weeks of FMLA leave remaining. She preserved a copy of this record. Defendant ended Plaintiff's leave designation on December 5, 2025 — only eleven days later — without documenting any legitimate basis for ending the leave while substantial FMLA time remained available.

31. By December 4, 2025, Plaintiff was locked out of her Defendant's 's Microsoft Teams account and Defendant's clocking and timekeeping system — eight days before her termination on December 12, 2025 and one day before Defendant's stated documentation deadline of December 5, 2025.

32. Despite being locked out of all employer systems, Plaintiff continued to engage through her personal email. Plaintiff communicated with Defendant's HR on December 8, 9, 10, 11, and 12, 2025, asserting on each date her ability and willingness to work at her primary clinic with accommodation. Defendant never sent any return-to-work instruction through any channel during this period.

**F. The Final Proposal and Termination**

33. On December 11, 2025, Defendant sent Plaintiff an accommodation proposal. Plaintiff responded the same day with a detailed written rebuttal identifying specific medical

deficiencies: (1) Defendant's walking distance measurements addressed only single patient encounter distances rather than cumulative physical demand across back-to-back patients throughout a full shift; and (2) Defendant's proposal to use a backless stool did not meet her physician's prescription for an ergonomic chair with lumbar and pelvic support.

34. In her December 11, 2025 rebuttal, Plaintiff explicitly stated in writing that she was "able, willing, and available" to work at her assigned Huntersville clinic with her provider's documented restrictions in place.

35. On December 12, 2025 — one day after receiving Plaintiff's detailed written rebuttal — Defendant terminated Plaintiff's employment without responding to her rebuttal, without waiting for further dialogue, without searching for reassignment opportunities, and without giving Plaintiff any reasonable opportunity to respond further. Defendant cited two reasons: (1) Plaintiff "declined accommodations"; and (2) Plaintiff "disengaged from the interactive process." Both stated reasons are directly contradicted by Plaintiff's written communications.

36. On December 12, 2025, Plaintiff immediately submitted a "Correction of Record" via personal email explicitly disputing both stated reasons for her termination and stating that she had not declined reasonable accommodations and had not disengaged from the interactive process. After receiving no response from Defendant to he December 12th correction email. Plaintiff resent that same correction email on December which the Defendant in turn did not respond to.

**G. The Secret December 8 Schedule and Impossible Return to Work Expectation**

37. While Plaintiff remained locked out of Microsoft Teams, company email, and the clocking system, Defendant placed Plaintiff on an internal work schedule for December 8, 2025 without notifying her, without providing a reporting location, and without any communication through the personal email or phone channels Defendant knew were available to reach Plaintiff. Plaintiff had no way to access or view any internal schedule during this period.

38. Defendant created the appearance of a missed return-to-work date while simultaneously ensuring Plaintiff had no means of knowing about or complying with any such expectation. Defendant then used Plaintiff's non-appearance as partial justification for her termination on December 12, 2025, despite never communicating any return-to-work instruction through any available channel.

39. Even if Defendant had created an internal schedule for December 8, Plaintiff worked across multiple clinic locations and had no way of knowing which location to report to, had no access to the clocking system to record her time even if she had appeared, and had received no return-to-work instruction through any channel despite Defendant having her personal email address and phone number and actively using both for other communications during this same period.

### H. Post-Termination Retaliation — False Unemployment Reporting

40. Following Plaintiff's termination, Defendant reported to the North Carolina Division of Employment Security that Plaintiff had voluntarily quit her employment without good cause. This report was false. Plaintiff did not voluntarily quit. She was involuntarily terminated by Defendant on December 12, 2025 after Defendant unilaterally ended the ADA interactive process.

41. Defendant's false report to the unemployment office caused Plaintiff to be initially disqualified from unemployment benefits, forcing her to expend time and resources in an appeal proceeding. This false reporting constitutes post-termination retaliation and demonstrates a continuing pattern of dishonest conduct across multiple legal proceedings designed to deprive Plaintiff of remedies she is legally entitled to receive.

### I. Audio Recordings of HR Admissions and Unemployment Proceedings

42. Plaintiff has audio recordings of a telephone call with Defendant's HR and Leave and Accommodation representative in which Defendant's representative: (1) acknowledged that Plaintiff had been working successfully at her primary Huntersville clinic with little to no flare-ups; and (2) asked Plaintiff to bring her personal sit-to-stand equipment to the Charlotte location. These admissions directly corroborate Plaintiff's position that her proposed accommodation was already working effectively, that the equipment belonged to Plaintiff personally, and that Defendant's own HR acknowledged the primary clinic accommodation was functioning.

43. Plaintiff has a complete audio recording of the February 25, 2026 unemployment appeal hearing before Referee Angela Cinski — the first unemployment hearing — in which the following occurred on the record: (1) Defendant's attorney Michael Curtis deferred his examination to the referee rather than conducting it himself, causing the referee to abandon her neutral role; (2) the referee denied Plaintiff's attorney's continuance request, which was preserved on the record; (3) Defendant's witness Christine Bolo testified that the clinic had to scramble for coverage on December 7, 2025 when Plaintiff did not appear, stating she knew it was December 7 because HR provided her that date; and (4) Defendant's witness admitted she could not verify that Plaintiff was ever notified of a return-to-work date, time, or location.

44. December 7, 2025 was a Sunday. Novant Health's clinics were closed on Sundays. The testimony that the clinic scrambled for coverage on that date was physically impossible. This false testimony was provided to the witness by Defendant's own HR department, demonstrating that the false information originated with Defendant's agents. The North Carolina Board of Review issued a remand order on April 17, 2026 finding the first hearing procedurally deficient and ordering a new hearing with witnesses who have direct personal knowledge of the facts to which they testify.

45. Plaintiff also has a complete audio recording of the second unemployment hearing conducted following the Board of Review remand. Both recordings are preserved and available as evidence in this proceeding. The pattern of false statements made by Defendant and its agents across multiple legal proceedings — the ADA interactive

process, the termination proceeding, the unemployment hearing, and the unemployment appeal — demonstrates a systematic effort to deprive Plaintiff of her legal rights through dishonest conduct.

## CAUSES OF ACTION

### COUNT I — DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA 42 U.S.C. § 12112(a)

46. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

47. The ADA prohibits covered employers from discriminating against a qualified individual on the basis of disability in the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

48. Plaintiff is a qualified individual with a disability who could perform all essential functions of the CMA position with reasonable accommodation.

49. Defendant discriminated against Plaintiff on the basis of her disability by placing her on involuntary leave against her physician's determination, refusing to provide effective reasonable accommodation, and terminating her employment. Defendant's stated reason for Plaintiff's termination is pretextual and directly contradicted by the documentary and audio evidence.

### COUNT II — FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA 42 U.S.C. § 12112(b)(5)(A)

50. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

51. Defendant failed to provide Plaintiff with reasonable accommodation by: (1) failing to initiate the interactive process for seventeen months despite documented knowledge of her disability; (2) offering accommodations that were not effective including a personal massager owned by Plaintiff herself, walking distance calculations addressing single encounters rather than cumulative shift demand, and a backless stool substituted for a prescribed ergonomic chair; (3) forcing Plaintiff to work at a location her physician documented as medically contraindicated; and (4) failing to consider reassignment as required by 42 U.S.C. § 12111(9)(B).

52. A reasonable accommodation existed — assignment to Plaintiff's primary clinic where accommodations were already in place and confirmed effective by Defendant's own representative in a recorded telephone call. Defendant refused to provide this accommodation.

### COUNT III — FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE ADA 42 U.S.C. § 12112(b)(5)(A)

53. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Defendant failed to engage in the interactive process in good faith by: (1) failing to initiate the process for seventeen months despite documented knowledge of Plaintiff's disability; (2) placing Plaintiff on involuntary leave rather than exploring

accommodations; (3) locking Plaintiff out of all communication systems before its own documentation deadline; (4) sending a final accommodation proposal on December 11, 2025 and terminating Plaintiff the following day without waiting for her response; and (5) terminating Plaintiff while the interactive process was actively ongoing. The party who failed to engage in the interactive process was Defendant, not Plaintiff.

## COUNT IV — RETALIATION IN VIOLATION OF THE ADA 42 U.S.C. § 12203(a)

55. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

56. Plaintiff engaged in protected activity by requesting reasonable accommodation on October 29, 2025 and by continuously engaging in the ADA interactive process thereafter.

57. Defendant took adverse employment actions against Plaintiff in direct temporal proximity to her protected activity, including placing her on involuntary leave one day after her formal accommodation request and terminating her employment six weeks later. The temporal proximity between Plaintiff's protected activity and Defendant's adverse actions, combined with the pretextual nature of the stated termination reason, establishes a causal connection between Plaintiff's protected activity and Defendant's retaliatory conduct.

## COUNT V — INTERFERENCE WITH FMLA RIGHTS 29 U.S.C. § 2615(a)(1)

58. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

59. Plaintiff had 7.99 weeks of FMLA leave remaining as of December 12th 2025 and currently that is the standing balance. Defendant ended Plaintiff's leave designation on December 5, 2025 — without documenting any legitimate basis for ending the leave while substantial FMLA time remained available. Defendant's termination of Plaintiff's leave designation while FMLA time remained available, combined with the subsequent termination of her employment, constitutes interference with Plaintiff's FMLA rights.

## COUNT VI — RETALIATION IN VIOLATION OF THE FMLA 29 U.S.C. § 2615(a)(2)

60. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

61. Defendant retaliated against Plaintiff for exercising her FMLA rights by placing her on involuntary leave, ending her leave designation while substantial FMLA time remained, and ultimately terminating her employment.

## DAMAGES

62. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer the following damages.

63. Lost wages and benefits, including back pay from the date of Plaintiff's involuntary leave placement on October 30, 2025 through the present, and front pay for the period Plaintiff will be unable to obtain comparable employment, including lost health insurance benefits, retirement contributions, and all other employment benefits.

64. Compensatory damages for severe emotional distress, heightened anxiety, depression, pain and suffering, loss of enjoyment of life, humiliation, and mental anguish caused by Defendant's discriminatory and retaliatory conduct. Plaintiff's emotional distress has been severe and ongoing from the date of the involuntary leave placement through the present.

65. Compensatory damages for loss of housing. As a direct and proximate result of Defendant's termination of Plaintiff's employment and the resulting loss of income, Plaintiff was unable to meet her financial obligations and was subjected to eviction proceedings in Mecklenburg County, including a court-ordered eviction executed by the Mecklenburg County Sheriff's Department in the presence of Plaintiff's neighbors, causing Plaintiff severe humiliation, distress, and loss of stable housing.

66. Compensatory damages for loss of healthcare and inability to treat a serious and painful medical condition. As a direct result of Defendant's termination of Plaintiff's employment, Plaintiff lost her employer-sponsored health insurance and was unable to afford continued medical treatment for the chronic lumbar stenosis with sciatica that was the subject of her accommodation request, causing ongoing physical pain and suffering. Defendant's unlawful conduct thus directly worsened the medical condition it was legally obligated to accommodate.

67. Compensatory damages for financial hardship and loss of quality of life. As a direct result of Defendant's termination, Plaintiff has struggled to pay utility bills, maintain her vehicle, and meet basic household expenses. Defendant's termination occurred in late 2025 and directly impacted Plaintiff's ability to provide for her family during the Thanksgiving and Christmas holiday seasons, including being unable to purchase Christmas and birthday gifts for her grandchildren, being unable to host Thanksgiving dinner for her family as she had done in prior years, and being required to rely on her adult son to provide a Thanksgiving meal. These losses of normal family life and personal dignity are compensable harms caused directly by Defendant's unlawful conduct.

68. Punitive damages pursuant to 42 U.S.C. § 1981a, as Defendant's conduct was malicious or done with reckless indifference to Plaintiff's federally protected rights. Defendant's pattern of conduct including placing Plaintiff on involuntary leave one day after her accommodation request, making false statements about provider availability and clinic scheduling, locking Plaintiff out of all communication systems before its own documentation deadline, terminating Plaintiff the day after receiving her written rebuttal, failing to consider reassignment before termination, providing false information to its own unemployment hearing witness, and falsely reporting to the North Carolina Division of Employment Security that Plaintiff voluntarily quit her employment demonstrates malicious or recklessly indifferent conduct warranting punitive damages.

69. Front pay in lieu of reinstatement. Due to the hostile and discriminatory conduct of Defendant and the irreparable breakdown in the employment relationship caused by Defendant's unlawful actions, Plaintiff does not seek reinstatement to her former position

and instead seeks front pay representing the economic value of future lost employment opportunities caused by Defendant's wrongful termination.

70. Attorneys' fees and costs of this action pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 2617.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Elane Martin respectfully requests that this Court enter judgment in her favor and against Defendant Novant Health, Inc. and award the following relief:

71. A declaration that Defendant's conduct violated the Americans with Disabilities Act, as amended, and the Family and Medical Leave Act;

72. An injunction requiring Defendant to cease and desist from all discriminatory and retaliatory conduct;

73. Back pay and all lost wages and benefits from October 30, 2025 through the date of judgment;

74. Front pay or equivalent future earnings, bonuses, and raises benefits, and seniority;

75. Compensatory damages in an amount to be determined at trial for emotional distress, pain and suffering, humiliation, and mental anguish;

76. Punitive damages in an amount to be determined at trial;

77. Pre-judgment and post-judgment interest;

78. Reasonable attorneys' fees and costs of this action; and

79. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Elane Martin, Pro Se Plaintiff
8318 Harris Pond Dr  Apt C
Charlotte, NC 28269
Telephone: 980-219-4506
Email: aejw7@yahoo.com
Date: 06/17/26

# VERIFICATION

I, Elane Martin, declare under penalty of perjury that I am the Plaintiff in the above-entitled action, that I have read the foregoing Complaint, and that the facts alleged therein are true and correct to the best of my knowledge, information, and belief.

Elane Martin

Date: 06/17/26